**JAMES M. HACKETT**
**401 Eleventh Avenue**
**Fairbanks, Alaska 99701**
**(907) 456-3626**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

MIGUEL A. GARCIA,     )
                         )
     Plaintiff,     )
                         )
vs.                    )     **PLAINTIFF'S MOTION**
                         )     **FOR PARTIAL SUMMARY**
                         )     **JUDGMENT**
WILFREDO GALLO,     )
YOLANDA CASILLAS, individually,     )
TACO VALLEY, INC., TACO AZTECA )
INCORPORATED,     )
                         )
     Defendants.     )
_____)

4:17-CV-0005-TMB

     Plaintiff Miguel A. Garcia ("Garcia") moves the Court to enter partial summary judgment on the following legal issues, pursuant to Civil Rule 56 and LR 56.1, because no genuine issues of material fact ("GIMF") exist, and Garcia is entitled to judgment as a matter of law:

     (1)     The doctrine of equitable tolling applies to the period of October 15, 2016 to December 15, 2016, or the approximate 60 day period of time Garcia assigned his wage claims against Defendant Taca Azteca, Inc. ("TA"), Defendant Wilfredo Gallo, and Defendant Taco Valley, Inc. ("TV") to the State Department of Labor, before the State Department of Labor reassigned Garcia's wage claims back to him to pursue privately;

1

(2)     The undefined term "employer" used in AS 23.10.060(d)(1) is defined by the FLSA definition of "employer" pursuant to AS 23.10.145;

(3)     Defendants' Answers to Garcia's Par. 18, 20, and 21 in Garcia's First Amended Complaint ("FAC") are binding judicial admissions on the parties, the Court, and on appeal, namely: Defendant TA and Defendant TV were Garcia's joint employer under FLSA and AWHA at all times pertinent (including 2016);

(4)     Undisputed evidence shows Defendant TA and Defendant TV constitute a "single [FLSA] enterprise" under 29 USC §203(r)(1), and undisputed evidence shows Defendant TA and Defendant TV were a "single enterprise" under 29 USC §203 (r)(1)during Garcia's employment with Defendants;

(5)     Based on Plaintiff's previous Affidavit[1], Defendant TA and Defendant TV were also an "enterprise engaged in commerce" under the first prong of 29 USC §203(s)(1(A)(i), independent of whether Defendant TA's and Defendant TV's combined volume of annual sales receipts, for 2013-2016, satisfies the $500,000 threshold under the second prong of 29 USC §203(s)(1)(A)(ii);

(6)     Whether or not Defendant TV, as an "establishment" under FLSA, earned $500,000 or more in annual sales receipts under 29 USC §203(s)(1)(A)(ii) is immaterial, because the pertinent legal issue is whether Defendant TA and Defendant TV together, as a single enterprise under 29 USC §203(r)(1), satisfied the second prong of annual sales of $500,000 under 29 USC §203(s)(1)(A)(ii) for FLSA coverage for years 2013-2016;

---

[1] Document 83, filed December 19, 2017.

(7)   Defendant TA and Defendant TV were also  Garcia's joint employer during 2016;

(8)   Named Defendants Wilfredo Gallo and Yolanda Casillas were also Garcia's "employer" as defined under FLSA and AWHA;

(9)   Garcia's employment with Defendants, when Garcia primarily worked at Defendants' TV establishment during the 2013-2015 time period, was not a bona fide administrative or executive position exempt from overtime (OT)  requirements under FLSA or AWHA;

(10)   Defendants willfully and recklessly disregarded FLSA requirements, and Defendants continue to willfully and recklessly disregard FLSA requirements in Garcia's case, including recklessly misclassifying Garcia's employment at Defendants' TV establishment as exempt from OT requirements, entitling Garcia to the protection of an extended three (3) year FLSA statute of limitations;

(11)   Garcia's 2016 hiring agreement with Defendants failed to comply with the written requirements of 8 AAC 15.100, thus all weekly 2016 compensation Garcia received from Defendant TA and Defendant TV during a single work week must be aggregated, and then divided by 40 hours, to arrive at Garcia's straight time rate for each of Garcia's 2016 work weeks;

(12)   When an employee like Garcia is entitled to damages under federal and state wage laws, that employee may recover under the statute which provides the greatest amount of damages;

(13) Defendants are liable to Garcia for unpaid "off-the-clock" work Garcia

3

performed when Garcia transported and delivered Defendant TV daily receipts, from TV's restaurant establishment on Chena Pump Road to Defendant TA's restaurant establishment on Airport Way, on a regular, routine basis during Garcia's overall 2013-2016 employment with Defendants;

(14) Defendants are liable to Garcia for unpaid OT wages, represented by Defendants' automatically deducted work time of 20 minutes or 30 minutes from Garcia's credited work hours, because of Garcia's repeatedly interrupted on-call time, including interrupted meal times, during Garcia's TV workdays when Garcia routinely worked in excess of 8 consecutive hours a day;

(15) Assuming the Court grants Garcia liquidated damages under FLSA and AWHA, Garcia is also entitled to prejudgment interest ("PJI") on unpaid overtime (OT) wages under AWHA (but not under FLSA).

## STATEMENT OF FACTS

### DEFENDANT TA'S RULE 30(b)(6) DEPOSITION EXCERPTS

On August 30, 2017 Defendant Wilfredo Gallo ("Gallo") testified on behalf of Defendant TA. Gallo brought no requested documents to Defendant TA's Rule 30(b)(6) deposition (5)[2]. Gallo confirmed Defendant TA filed federal corporate income tax returns annually (7-8). Gallo has federal income tax records showing Defendant TA's annual gross sales for 2013-2015(9). Gallo first saw Garcia's Rule 30(b)(6) deposition

---

[2] The number in parenthesis—"(5)"—represents the page number to Defendant TA's corresponding Rule 30(b)(6) transcribed deposition (and to other depostions as well).

notice to Defendant TA on August 29, 2017 (10). Defendant TA maintains one corporate account, and Gallo is the only authorized signer (13). Gallo testified he was TA's "100 percent owner or president", there were no other officers, and Gallo "d[id] everything" (14). Gallo testified Defendant TA has two restaurant locations, one at 3401 Airport Way in Fairbanks, and the other at 101 Santa Claus Lane in North Pole, Alaska (15). Gallo and Defendant Yolanda Casillas ("Casillas") have two (2) children together, a son and a daughter (19).

Gallo has been in the restaurant business since 1991(19). Gallo started his own restaurant business in about 2005 in Fairbanks with Casillas (20). When Defendant TA first opened, Gallo did the cooking, washing, sweeping, and mopping, and Casillas "was a cashier in the front of the house" (20). Gallo estimated Defendant TA incorporated about a year and a half or two years later (21). Gallo testified Defendant TA employed "[p]robably around 10, 11" employees, including Gallo and Casillas (22-23). Excluding Gallo and Casillas from TA employees, Gallo explained the other 8 or 9 TA employees consist of "dishwasher, cooks, servers, [and] bussers" (23). Gallo hired the 8 or 9 other TA employees on Airport Way (27). Gallo set employees' wage rates (27-28). Gallo also initially arranged other TA employees' work schedules (28).

Gallo testified Defendant TA's daily sales receipts average "about $2200 a day" (23). Gallo testified Defendant TA's North Pole restaurant opened in 2014(24). Gallo confirmed Defendant TA's North Pole restaurant averages $50,000-$60,000 a month in sales receipts (24). Gallo testified Defendant TA's restaurant at Washington Plaza (on

Airport Way) in 2016 earned roughly $700,000 in annual sales receipts (27). Gallo testified Defendant TA's North Pole restaurant in 2016 earned approximately $480,000 in annual sales receipts (27). Gallo testified Defendant TV's restaurant earned approximately $230,000 in annual sales receipts in 2016 (27).

## DEFENDANT TV'S RULE 30(b)(6) DEPOSITION EXCERPTS

*Defendant TV's Establishment Opened In 2011-2012.* On August 30, 2017 Defendant Wilfredo Gallo ("Gallo") also testified as the designated corporate agent for Defendant TV (3-4). Defendant TV was incorporated in 2011 or 2012, "right before we opened" [the TV restaurant location] (8). Accountants helped Defendant Gallo with the incorporation paperwork (8). Defendant TV has a drive-up window, but neither Defendant TA location—on Airport Way and in North Pole—has a drive-up window (11). Defendant TV made $280,000 in annual sales receipts the first year it opened (12).

*Gallo Confirmed Repetitive Cleaning Is An Integral Part Of A Cook's Duties.* Gallo hired Garcia (14). Gallo established Garcia's rate of pay (31). Gallo taught Garcia how to cook (15). Gallo taught Garcia everything "from prepping to all the recipes to cooking", or "everything [Garcia] needed to know" (15). Gallo testified "in order for a person to perform well…you have to have a clean area and a clean restaurant" (18). Gallo confirmed Garcia's duties included "clean[ing] a table or two, sweep[ing] the floors around 2:30, 4:00 o'clock" (18). Gallo testified State inspectors periodically inspect kitchens (18-19). Gallo taught Garcia how "to talk to the customers through the window", or "[t]hrough the kitchen window" "where we placed the plates" (21) (18). When Gallo started teaching Garcia, Garcia had no culinary skills (20, 21). Garcia was Gallo's

6

apprentice, and Gallo thought Garcia was "ready to go" after about six months (21). Gallo testified the last thing Garcia learned was how to cook "the actual food that we prepared" (22). Gallo confirmed keeping the kitchen clean was part of a cook's duties (24). Gallo testified cleaning was a continuous duty for a cook (25).

*Gallo Confirmed Cleaning Is A Daily Routine Of A Cook's Duties.* Gallo described a cook's normal daily duties at a restaurant: (1) "[f]rom 11:00 to 2:00, we might get a rush; (2) '[f]rom 2:00 to 5:00, it's dead" "[s]o instead of standing around, clean your area"; (3) "[f]rom5:00 to 7:00 or 8:00, we get another rush"; and (4) "[f]rom 8:00 to 10:00, we start cleaning, getting ready to close" (25).

*Gallo Confirmed His Restaurants Order Food From Food Brokers.* Gallo confirmed all Defendants' restaurants order ingredients and food from food brokers: from FSA (Food Services of America) and DiTomaso (a produce expert in Anchorage); Quality Sales Food Service, and "sometimes Sysco" (27). Gallo opened those food accounts in Gallo's name (27). Gallo explained: "[a]ll of our places are on the same [ordering] days so leave some time", "[w]e order Monday for Thursday, Thursday for Friday. Or whenever you run out of something, you call Quality because they're local, and whoever's in charge of the kitchen runs over, picks it up" (28). Gallo explained Defendants' food order is normally delivered unless it is ordered on the weekend (28). Gallo is responsible to pay the ordered food bills (29).

*Defendant Wilfredo Gallo and Defendant Yolanda Casillas Handled Employees' Wage Checks.* Gallo signs all checks (30). Gallo explained if he (Gallo) is unavailable,

Gallo then leaves signed checks, "[a]nd if it's pay period, Yolanda [Casillas] takes care of that" (30).

*Gallo Established Restaurants' Hours Of Operation And Types Of Food Served.* Gallo testified Defendant TA's hours of operation are 11:00 a.m. to 10:00 p.m. daily (15), but Defendant TV's hours of operation are 11:00 a.m.to 9:00 p.m., closed on Sundays (15,16). Defendant TA is not closed on Sundays (16). Gallo decided what types of food his restaurants serve (17).

### DEFENDANT WILFREDO GALLO'S DEPOSITION EXCERPTS

*Gallo Aware Of OT Requirements.* On August 30, 2017 Plaintiff also took Defendant Wilfredo Gallo's individual deposition. Gallo was aware of overtime (OT) requirements, having previously worked as a sales representative at Wal-Mart where Gallo occasionally received OT (9,10).

*State Department of Labor Wage and Hour Posters.* Gallo identified Exhibit 2, a state wage and hour poster (29). Gallo was aware federal law required overtime (OT) wages be paid to non-exempt employees for hours worked over 40 hours in a workweek, and state law required OT wages be paid to non-exempt employees for hours worked over 8 hours in a workday (29, 30). Gallo has been aware of those federal and state OT requirements for about a decade (30).

*Basis Of Gallo's Claim Garcia's Employment At TV Was Exempt From OT Requirements.* Gallo testified Garcia was a kitchen manager, exempt from federal and state OT requirements, when Garcia worked at Defendant TV (38, 39). Gallo admitted

Defendants have no written employment document stating Garcia was a "kitchen manager", exempt from OT requirements, when Garcia worked at Defendants' TV location (17). When Garcia worked as a cook at TV, Gallo never asked the State Department of Labor, nor the federal Department of Labor, nor anyone else, whether Garcia's job duties as a cook at TV were exempt from federal and state OT requirements (34, 35,57,72). Gallo could not identify any statutory exemption exempting Garcia's work as a cook at TV from OT requirements (56).

*Gallo's Incorrect Understanding For Claiming Garcia's Exempt OT Status When Garcia Worked At TV.* Gallo testified, and admitted, a commonly held misunderstanding about OT exemption status: Gallo understood Gallo's paying Garcia a salary made Garcia's job duties at TV exempt from OT requirements:

> Q. Is it your understanding that if you pay a salary that that's the only requirement that – that you need to do in order not to pay the employee overtime?
>
> A. *From my understanding yes, that's what I do* (italics added) (65)[3].

Garcia refused to answer a deposition concerning one of Defendant TV's produced payroll documents (Exhibit 4), stating "I don't take care of the payroll" (25). Garcia never discussed Garcia's OT status with Casillas (who took care of payroll) because Gallo "was making [his] own decisions" (35). Gallo testified Defendants owed Garcia nothing for OT during the 2013-2015 time period because "[e]verything's been paid for" (72). Gallo testified Defendants owed Garcia nothing for Garcia's 2016

---

[3] Gallo so testified in August 2017, even though Gallo has been represented by an attorney for months.

employment because Defendants paid Garcia a check in the net amount of $233 for OT in November 2016, following receipt of a State Department of Labor investigative letter (71-72).

*Gallo Has Never Contacted State Department Of Labor.* In 2016, after Gallo and Defendant TA received a letter from the State Department of Labor, Gallo confirmed he (Gallo) never personally contacted the State himself (66). Gallo testified Defendant TA and Defendant TV were not interrelated: according to Gallo, Defendant TA and Defendant TV were "two individual companies" (58)[4].

At his deposition Gallo was shown Exhibit 15, an enclosure Casillas forwarded to the State Department of Labor in November 2016, as part of Defendant TA's response letter (Exhibit 13) (74). Gallo testified mistakenly Exhibit 15 represented Garcia's total number of 2016 hours Garcia worked for Defendants during 2016 (74)[5].

---

[4] Gallo's deposition testimony incorrectly implies Defendant TA and Defendant TV were separate companies for wage and hour purposes. Gallo's deposition testimony is contrary to Defendants' binding judicial admissions to Par. 18, 20, and 21 of Garcia's FAC that at all times pertinent Defendant TA and Defendant TV were Garcia's joint employer under the FLSA and AWHA.

[5] Exhibit 15 represents Garcia's partial 2016 work hours at Defendant TA, not at Defendant TV, during 2016. Defendant Yolanda Casillas made clear during her deposition testimony Exhibit 15 shows only credited work hours at Defendant TA, not at Defendant TV; Casillas explained the State Department's November 2016 investigative letter only asked about Defendant TA, not about Defendant TV. Exhibit 15 fails to show: (1) 41.45 hours of credit work time [excluding 2.00 hours of automatically deducted time (which Garcia contests)] Garcia worked at Defendant TV during July 2016 (as shown in "D.372"); (2) 69.00 hours of credited work time [excluding 3.00 hours of automatically deducted time (which Garcia contests)]Garcia worked at Defendant TV during August 2016 (as shown on "D. 108"); and (3) and 66.32 hours of credited work time [excluding 3.00 hours of automatically deducted time (which Garcia contests)] Garcia worked at Defendant TV during September 2016 (as shown on "D. 109").

*Gallo's 2016 Rehire Of Garcia.* Gallo confirmed he rehired Garcia in 2016 to work as a non-exempt cook to Defendant TA (12,27). At time of rehire in 2016, Gallo told Garcia to "talk to Yolanda" and "fill out the paperwork" (27). In 2016 Gallo told Garcia "I'm going to pay you $14 an hour and no more than 80 hours every two weeks" (27)[6]. When Gallo told Garcia 80 hours, Gallo meant 40 hours a week (29). In 2016 Gallo "wasn't willing to give [Garcia] a position as a manager", and Gallo "wasn't willing to give [Garcia] any overtime" either (27,28). Gallo identified Exhibit 8, Garcia's 2016 signed hiring agreement with Defendants (27). According to Gallo, Garcia "never worked overtime" because "I had him [working] at four days, four days a week, and [Garcia] never did overtime" (12).

### DEFENDANT YOLANDA CASILLAS' DEPOSITION EXCERPTS

*Gallo and Yolanda Casillas Came To Fairbanks In 2005.* On August 30, 2017 Garcia took Defendant Yolanda Casillas' ("Casillas") deposition. Casillas and Wilfredo Gallo have two children together (5). Casillas and Gallo came to Fairbanks in October 2005 (5). Casillas testified Defendant TA's restaurant started in 2007; Defendant TV's restaurant started in 2010-2011; and Defendant TA's North Pole restaurant started in 2014(10, 11).

Casillas identified Exhibit 2, a state Department wage and hour poster (6). Casillas started picking up the wage and hour posters, on an annual basis, from the State

---

[6] However, Defendants' records show Defendant TA paid Garcia a $2800 salary during 2016.

Department of Labor (9). Casillas then posted the wage and hour posters at Defendants' restaurants, including, later, at all three restaurant locations (10). Casillas confirmed she posted state wage and hour posters at Defendant TV's restaurant, and also at Defendant TA's restaurants (on Airport Way and in North Pole (10).

*Casillas' Duties And Job Title.* Casillas' duties include filling out employees' payroll checks, signed by Gallo (8,9). Casillas signed Defendant TA's November 2016 response letter (Exhibit 13) to the State Department of Labor (11). Casillas typed up and signed the letter on behalf of Defendant TA, signing the letter as "Manager/HR" (11, 12). Casillas' title meant she was a "head manager" (11, 12). Casillas described her duties as supervising: "I'm in the front of the restaurant, kind of cover[ing] cashiers, wait staff, bussers, whatever [it] needs to keep the restaurant running in the front of the restaurant" (14). Casillas fills out employees' wage checks (15,16). Casillas' primary work location is in an office at Defendant TA's Airport Way restaurant location (19). Casillas discussed her November 2016 letter to the State Department of Labor with Gallo (16, 17). Casillas identified Exhibit 13 as TA's signed November 2016 response letter to the State Department of Labor (22). Casillas testified Exhibit 13's reference to "a different corporation" meant Defendant TV (22). Casillas identified Exhibit 15, TA's 2016 hours for Garcia enclosed with Exhibit 13, and confirmed TA's Exhibit 15 did not include 2016 hours Garcia worked at Defendant TV (22, 23).

*In 2016 Casillas Did Not Provide TV Wage And Hour Information To State Department Of Labor.* Casillas testified in November 2016 she did not provide the State Department of Labor with any 2016 wage and hour information about Garcia's 2016

hours worked for Defendant TV because "they never asked for Taco Azteca Dos" (23)[7].

Casillas identified Exhibit 17 (24). Casillas confirmed Exhibit 17 represents Defendants'

discovery documents marked D.108 and D. 109, or Defendants' time records showing

Garcia's work hours at Defendant TV during August 2016 and September 2016 (24, 25).

Casillas testified Garcia's 2016 TV work hours shown in Exhibit 17 were not included in

Exhibit 15, an enclosure Casillas sent to State Department of Labor in November 2016,

showing Garcia's 2016 TA work hours (25).

*Casillas Was Aware Of Federal And State Overtime Requirements*. Casillas

identified language in the state wage and hour poster requiring an employer to pay OT

wages to a non-exempt employee working more than 40 hours in a workweek or more

than 8 hours in a single workday (14, 15).

Casillas was aware of Defendants' obligation to pay non-exempt employees OT

wages if employees worked more than 40 hours a week, or more than 8 hours in a single

workday (25). Casillas has been aware of that OT requirement for a long time (25, 26).

Casillas confirmed Defendant's computerized time system automatically deducts time

from an employee's daily hours worked (29).

*Casillas Generally Works In An Office And Garcia Always Worked In Kitchen*

*Areas*. Casillas confirmed Garcia never worked in an office, and that Garcia always

worked in kitchen areas, both at Defendant TA's restaurant locations and at Defendant

---

[7] "Taco Azteca Dos" is the same as Taco Valley, Inc., or "Defendant TV".

TV's restaurant location (20). Casillas confirmed both Defendant TA and Defendant TV are Mexican restaurants, both involved in the food business (22).

PLAINTIFF MIGUEL GARCIA'S DEPOSITION EXCERPTS

*Garcia's Date Of Birth In Dominican Republic.* Defendants took Garcia's deposition on August 31, 2017. Garcia was born on March 18, 1988 in the Dominican Republic (7,8). Garcia first came to the United States (Florida) in 2007 to play baseball (18).

*Gallo Hired Garcia At $9.00 An Hour.* Gallo first paid Garcia at $9.00 an hour, based on Exhibit 16 (80).

*Defendants First Employed Garcia In 2008.* Garcia came to Fairbanks, Alaska in 2008, the same year Garcia met Defendant Wilfredo ("Willy") Gallo (16-18). Gallo hired Garcia as a dishwasher in TA's kitchen (20). Garcia worked at TA Airport Way between 2008 and 2011(23). Garcia learned to cook and clean (21). Garcia was always working "with somebody else" at TA (22). Garcia had "never see[n] burrito or tacos in [his] life before, so it was a lot to process" (22).

*Garcia Left In 2011 And Returned In 2012.* In 2011 Garcia left Defendants' employment, went to work as a cook at the Cookie Jar Restaurant in Fairbanks, then returned to employment with Defendants in 2012 (23, 83). Gallo and Garcia went to Defendant TV to clean the restaurant, before it opened for business with the public (23).

*Gallo Transferred Garcia To TV.* In 2012 Gallo transferred Garcia from TA to TV (27). Anna Wheeler was already working at TV (47). Garcia did not know how to make rice at TV (28). At first there were two regular cooks at TV (including Garcia),

14

neither one of whom was in charge of the other (40). Bu 2013 Garcia was the only cook at TV[8].

*Garcia's Work Duties At TV.* Garcia worked at TV as a cook 6 days a week, Monday through Saturday, at TV (29). At TV Garcia's duties were to "cook and clean the kitchen, make sure everything was clean" (30). "[O]nce a week", Garcia cleaned the "whole restaurant", including "clean[ing] the walls and fryers, sweep[ing] the floor, tak[ing] the trash [out]" (30, 167). On a daily basis Garcia cleaned TV's kitchen grill (168). Once Gallo told Garcia Anna Wheeler was the boss at TV, and Garcia was "just a cook" (168,169). Garcia "wasn't in charge of everything" (30). Garcia "was the one to cook" at TV (30).

*Redo Food.* If the food at TV was not done right, Anna Wheeler would bring the food back and Garcia would have to remake it (172). Once Casillas ran her fingers over a work surface at TV, telling Garcia that surface needed to be cleaned: Garcia cleaned the surface (168).

*No Regular TV Dishwasher After 2012.* The dishwasher left TV in December 2012, and "after that, we never had a dishwasher" (35). Garcia frequently asked for a dishwasher at TV, but Willy refused (169). During the 2013-2015 time period two (2) people were employed at TV: Anna Wheeler and Garcia (31, 42-43). Anna Wheeler acted as cashier (39). Anna Wheeler's duties were to "count the money and do all the stuff, count the stuff" (39). Garcia would "never say no" to having a dishwasher work at TV,

---

[8] *See* Garcia's Affidavit dated January 8, 2018, Par. 13.

"because it was a lot of work for [Garcia] to do to cook, to clean, to take out the trash, to sweep and to mop" (41).

Occasionally a dishwasher would also work there, but that was only "for one week or three day[s]"(32). Garcia would "wait for dishwasher and he never showed up"(32, 33). Garcia would call Yolanda [Casillas] or Willy [Gallo] , who would say "we just—we need him over here [at TA]" (34). In addition Garcia "would have to do [that] job", or dishwashing (34).

*Garcia Worked Long TV Work Days.* In late 2013 Garcia was working as a cook five (5) days a week at TV (112). Garcia would arrive at TV at about 9:30 a.m. to 10:00 a.m., and work until about 10:00 p.m. (112)[9].

*Places Garcia Received Paychecks.* When working at TV, Garcia often picked up paychecks at TA on Airport Way (166). Occasionally  Casillas, or Gallo, would deliver paychecks to Garcia at TV (166, 167).

*Garcia Opened (And Closed) TV Except On Garcia's Day Off.* In 2012 Gallo opened TV, and Garcia and another cook arrived about 11:00 a.m. (44, 59). During the 2013-2015 time period Garcia normally opened TV, where Garcia's duty "was to make sure the food was ready by—to serve bv 11:00 [a.m.],  to be early in the restaurant" (51). Arturo or somebody else opened TV on Garcia's day off (53)

*Garcia Started Working 5 Days A Week At TV In Late 2013.* TV is closed on Sundays (53).  Following Garcia's divorce in late 2013, Garcia started working 5 days a

---

[9] *See* Garcia's correction sheet at Page 112, l. 12-13.

Case 4:17-cv-00005-TMB   Document 85   Filed 01/09/18   Page 16 of 49

week at TV (53). Garcia took off Mondays to take care of his son on Sunday and Monday (57). Arturo, a cook at TA on Airport Way, would cook at TV on Mondays (57,58). Garcia would hide a key at TV for Arturo to open TV (58).

*Garcia's Delivery Of TV's Daily Receipts To TA On Airport Way.* Following TV's close at 9:00 p.m., Garcia would "wait for Anna Wheeler to finish the money", then "after she was done", Garcia would "close the door, and take that receipt to Taco One" (59). TV's daily receipts consisted of credit card receipts, cash, and the printed report of the day (67). TV's daily receipts ranged from $1,000 to $1,700 (68,69).

Garcia routinely delivered TV's daily receipts to TA on Airport Way on each one of his five (5) TV work days (59, 61). Delivery of TV's daily receipts to TA was a daily duty (59). Anna Wheeler would do deliveries 1 or 2 times every 3 months (62). At TA, Garcia would either hand the receipts to Anna Oprea or Tiana, give the receipts to anybody working the Mayan Palace side, or leave the receipts on the desk in the office, telling someone the TV receipts were there (62-65;69-71). Yolanda [Casillas] and Willy [Gallo] were not around: TV closed at 9:00 p.m., TA closed at 10:00 p.m .(on weekdays, but at 11:00 p.m. on weekends); and "it was late night" when Garcia delivered TV's daily receipts (70). When Garcia worked two days a week at TV in 2016, Garcia also delivered TV's daily receipts to TA on Airport Way (123-124; 126).

*Food Ordering At TV.* Like Defendant TA, Defendant TV ordered food on Mondays and Thursdays (72). The food was delivered on Tuesdays and Fridays (73). Garcia did not order the food on Mondays because that was Garcia's day off, so Anna or the other cook ordered food on Mondays (72). Garcia ordered the food on Thursdays

(73). The cooks, or sometimes Anna Wheeler, would check to make sure "we got everything you ordered" (73).

*No Authority To Hire Or Fire.* Garcia had no authority to hire or fire: Garcia "never hire[d] or interview[ed] anyone if [his] life, or fire[d] anyone in [his] life" (74).

*Garcia's 2016 Rehire Agreement.* Gallo rehired Garcia in early July 2016 as a cook, and Garcia signed a 2016 rehire agreement (Exhibit 8) in front of Defendant Yolanda Casillas (81,82)[10]. Defendant Yolanda Casillas would "give [Garcia] a hand" with his employment paperwork" (90). Garcia was paid fixed amounts twice a month, first at $1450 and later at $1500 a month (97). During 2016 Garcia worked for both TA and TV, occasionally working 4-5 days at North Pole (126, 131-132). When Garcia arrived at North Pole, Garcia would call TA Airport Way, and they "would clock [Garcia] in" (129).

*Garcia's Receipt Of 2016 Overtime Check.* In 2016 Garcia contacted the State Department of Labor, complaining Defendants had not paid Garcia properly (12). Thereafter Defendants forwarded an OT check to the State, made payable to Garcia (133). Garcia cashed the check (133). Neither Garcia nor Moira [Westervelt], the State wage and hour Investigator, understood how Defendants arrived at their OT amount (133-135).

*Garcia's Typical Workday At TV.* During the 2013-2015 time period, Garcia generally showed up at TV at about 9:30 a.m. on his workdays, and remained working at

---

[10] Garcia's 2016 hiring agreement is Exhibit 8.

Case 4:17-cv-00005-TMB   Document 85   Filed 01/09/18   Page 18 of 49

TV until about 10:00 p.m. or 10:15 p.m. (112,113).

> *Garcia's Interrupted Meal Times.* Garcia received a meal every day (116). Garcia normally sat down to eat about 3:00 p.m. (116). Garcia explained that while this time was slow, that "doesn't mean nobody came to buy anything" (116). If someone came, Garcia would "have to get up and make the order" (117). Garcia's meals were interrupted "[a] lot", which meant "everyday" if TV "didn't have [a] dishwasher" (118).

### EQUITABLE TOLLING APPLIES TO EXCLUDE THE PERIOD OF OCTOBER 15, 2016 TO DECEMBER 15, 2016 FROM STATUTES OF LIMITATIONS

On October 15, 2016 Garcia contacted the State Department of Labor. On October 15, 2016 Garcia assigned his unpaid overtime (OT) compensation against Defendant Wilfredo Gallo and Defendant TA to the State. In October 2016 the State sent an investigative letter to Defendant Gallo and Defendant TA. In November 2016 Defendant Yolanda Casillas responded on behalf of Defendant TA. On December 13, 2916 Garcia assigned his unpaid OT claim against Defendant TV to the State. On December 15, 2015 the State reassigned Garcia's wage claims back to him to pursue privately. On December 16, 2016 Garcia filed suit in state court.

The doctrine of equitable tolling "relieve[s] a plaintiff from the bar of the statute of limitations when he has more than one legal remedy available to him" so that after the plaintiff "adopts a single course of action which is dismissed or otherwise fails, courts generally allow the plaintiff to pursue a second remedy based on the same right or

claim[11]. The statute of limitations is thus tolled during the pendency of the initial defective action, giving the plaintiff the full statutory period to file once tolling ceases[12]. In such circumstances, the statute is equitably tolled if: (1) pursuit of the initial remedy gives defendant notice of plaintiff's claim; (2) a defendant's ability to gather evidence is not prejudiced by the delay; and (3) plaintiff acted reasonably and in good faith.[13]

Federal law is consistent with Alaska law. As applied to federal statutes of limitations, Congress legislates against a background of common-law adjudicatory principles: there is a presumption that "[e]quitable tolling applies if the period in question is a statute of limitations and if tolling is consistent with the statute"[14]. Equitable tolling is consistent with FLSA. FLSA's §218 is a saving clause which protects more restrictive OT state statutes like AWHA. FLSA also has an extended 3-year limitations statute for an employer who willfully and recklessly disregards FLSA requirements.

### THE UNDEFINED TERM "EMPLOYER" IN AS 23.10.060 IS THE FLSA DEFINITION OF "EMPLOYER" PURSUANT TO AS 23.10.145

AWHA does not define the term "employer". AS 23.10.060, AWHA's overtime (OT) statute, uses the term "employer". Regulations adopted under AWHA do not define the term "employer"[15]. AS 23.10.145 **Definitions** mandates that undefined AWHA terms

---

[11] *Fred Meyer of Alaska, Inc. v. Bailey,* 100 P.3d 881, 886 (Alaska 2004)("*Fred Meyer*").

[12] *Id.*

[13] *Id.*

[14] *Lozano v. Montoya Alvarez,* 134 S.Ct. 1224, 1232 (2014)("*Lozano*").

[15] *See* 8 AAC 15.910 **DEFINITIONS**.

shall be defined in accordance with FLSA definitions: "[i]f not defined in this title or in regulations adopted under this title, terms used in AS 23.10.050-23.10.150 shall be defined as they are defined in 29 U.S.C. 201-219 (Fair Labor Standards Act of 1938), as amended, or the regulations adopted under those sections". As a matter of law the definition of "employer" used in AS 23.10.060 is FLSA's definition of "employer".

## DEFENDANTS' ANSWER ADMISSIONS ARE BINDING JUDICIAL ADMISSIONS

Defendants' Answer to Garcia's Par. 18, 20, and 21 in Garcia's First Amended Complaint ("FAC") admit Defendant TA and Defendant TV were Garcia's joint employer at all times pertinent under FLSA and AWHA[16]. Defendants' Answer admissions are binding on the parties, on the Court, and on appeal[17].

## DEFENDANT TA AND DEFENDANT TV CONSTITUTE[D] A SINGLE ENTERPRISE ENGAGED IN COMMERCE UNDER FLSA (AND ALSO UNDER AWHA)

The accompanying Affidavit of Garcia's attorney shows that Defendant TA and Defendant TV constitute a "single enterprise" under 29 USC §203 (r)(1). 29 USC §203(r)(1) is FLSA's "single enterprise" section, and states in part:

'Enterprise' means the related activities performed (either through unified operation or common control) by any person

---

[16] Document 13, filed 04/27/17, Page 3 of 7.
[17] *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (holding "[t]he admissibility of evidence…is generally a procedural matter governed by the Federal Rules of Evidence…[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well", quoting *Ferguson v. Neighborhood Housing Services*, 780 F.2d 549, 551 (6th Cir. 1986)).

or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

Defendant Wilfredo Gallo is the common owner of both TA and TV. Defendant TA has two (2) Mexican restaurant locations or establishments: one on Airport Way in Fairbanks, and the other on Santa Claus Lane in North Pole. Defendant TV is a Mexican restaurant establishment located on Chena Pump Road in Fairbanks. Defendant TV's establishment delivers its daily receipts to Defendant TA's Airport Way location. Defendant TA's North Pole establishment also delivers its daily receipts to Defendant TA's Airport Way location. All of these establishments operate under a unified, common control. All of these establishments are engaged in related Mexican restaurant activities. Defendant TA and Defendant TV are a "single enterprise" under FLSA.

Garcia's December 2017 affidavit (Document 83) establishes there is no GIMF that Defendant TA and Defendant TV are also an FLSA "enterprise engaged in commerce" under the first statutory prong of 29 USC §203(s)(1)(A)(i).

The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" as a business that (1) has at least two (2) employees "engaged in commerce or in the production of goods for commerce, *or* that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced

for commerce by any person" *and* (2) has an annual gross revenue of at least $500,000[18]. The first prong of the definition, namely where the plaintiff has "handl[ed]...or otherwise work[ed] on goods or materials that have been moved in or produced for commerce by any person"[19], is relatively easy to establish[20]. "An employee's handling of cleaning and janitorial supplies and food products is sufficient to establish the first prong of enterprise coverage"[21].

In order to be subject to the FLSA's maximum hours rules, an employee must be "engaged in commerce or the production of goods for commerce" (individual coverage) or be "employed by an enterprise engaged in commerce" (enterprise coverage). 29 USC §207(a)(1). Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States". Id. at §203(b). For enterprise coverage, the employer engaged in commerce must have yearly revenue of $500,000 or greater. 29 USC §203(s)(1)(a)(ii).

An employee can be covered under the FLSA if either individual or enterprise coverage attaches[22]. Absent individual coverage, an entity's enterprise status is necessary

---

[18] *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F.Supp.3d 337, 346 (E.D. N.Y. 2014) ("*Rocha*").

[19] 29 USC §203(s)(1)(A)(i).

[20] *Rocha*, 44 F.Supp.3d at 346 (citing *Rodriguez v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114, 121 (E.D.N.Y 2011) (holding first prong satisfied "if Plaintiffs merely handled supplies or equipment that originated out-of-state")).

[21] *Rocha*, 44 F.Supp.3d at 346.

[22] *Zorich v. Long Beach Fire Dep't and Amb. Service, Inc.*, 118 F.3d 682, 686 (9th Cir. 1997).

for FLSA coverage[23]. To be subject to FLSA requirements, an entity must either be an enterprise in its own right, or part of a single enterprise. The criteria for determining whether various entities constitute a single enterprise are contained in §203(r)(1): the entities must perform "related activities" through "unified operation" or "common control" for a "common business purpose"[24].

Defendant TV, organized about 5 years after Defendant TA, does not individually make over $500,000 a year. Therefore, in order to have enterprise liability attach under FLSA, Defendant TV and Defendant TA would need to constitute a single enterprise. Three requirements must be met for businesses to be grouped together in determining FLSA coverage. The businesses must have "related activities, unified operation or common control and common business purpose"[25]. Activities are related if they are "the same or similar". Defendant TA and Defendant TV are both Mexican restaurants.

The Ninth Circuit has not defined "common business purpose" other than to say that it is "generally found where there are related activities and common control". Control means "the power to direct, restrict, regulate, govern, or administer the performance of the activities". 29 CFR §779.221. Common control, thus, means "the sharing of control and it is not limited to sole control or complete control by one person or corporation". Defendant Wilfredo Gallo is the owner of both Defendant TA and Defendant TV: the

---

[23] *Chao* v. *A-One Medical Servs., Inc.* 346 F.3d 908, 916 (9th Cir. 2003) ("*Chao*").

[24] *Thompson v. Robinson, Inc.*, 2007 WL 2714091, *4 (M.D.Fla. 2007).

[25] 29 USC §203(r)(1); *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 915 (9th Cir. 2003) ("*Chao*").

evidence is undisputed Defendant Gallo controls both Defendant TA and Defendant TV.

Defendant TA and Defendant TV are a single enterprise under FLSA as a matter of law.

## DEFENDANT TA AND DEFENDANT TV WERE ALSO GARCIA'S HORIZONTAL JOINT EMPLOYER

Once enterprise coverage is established, it is a separate question of whether the

businesses are liable as joint employers under §207[26]. If an employee is jointly employed

such that "employment by one employer is not completely disassociated from

employment by the other employer(s), all of the employee's work for all of the employers

during the workweek is considered as one employment for the purposes of the Act". 29

CFR §791.2 **Joint Employment** (a). This is generally a fact-specific determination. *Id.*[27]

In cases of horizontal joint employment FLSA regulations detail situations where

a horizontal joint employment relationship will generally exist[28]. The facts are undisputed

that Defendant TA and Defendant TV constituted Garcia's horizontal joint employer

under FLSA. First, there is horizontal joint employment if "there is an arrangement

between the employers to share the employee's services". 29 CFR §791.2(b)(1). Second,

---

[26] *Chao*, 346 F.3d at 917("Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under §207 are technically separate issues").

[27] But it is not a fact specific determination in this case: no GIMF exists. Defendants admitted and answered Defendant TA and Defendant TV were Garcia's joint employer under FLSA and AWHA at all times pertinent (namely 2013-2016).

[28] *Litzendorf v. Property Maintenance Solutions LLC*, 2017 WL 5900830, at *4 n. 2 (D. Ariz. 2017) (contrasting horizontal joint employment with vertical joint employment, which "exists when 'a company has contracted for workers who are directly employed by an intermediary company'", citing *Chao*, 346 F.3d at 917; *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470(9th Cir. 1983); and *Torres-Lopez v. May*, 111 F.3d 633, 6740 (9th Cir. 1997)).

there is joint employment where "one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee". *Id.* at §791.2(b)(2). Finally, horizontal joint employment exists "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. *Id.* at §791.2(b)(3). All three of these situations exist regarding Defendant Wilfredo Gallo, Defendant TA, and Defendant TV, and Garcia.

Defendant TA and Defendant TV—Garcia's admitted joint employer under FLSA and AWHA at all times pertinent—always had 4 or more employees employed[29] and working during 2013-2015. This result is further bolstered by 8 AAC 15.910(a) (21), which states: "'regular course of business', as used in AS 23.10.060(d)(1), means those activities which are integral and necessary to any enterprise activity in which the employer is primarily engaged". Defendant TA and Defendant TV were also engaged in the same "enterprise activity" under 8 AAC 15.910(a)(21).

*The Ninth Circuit Has Rejected The Coming-To-Rest Doctrine For Purposes Of An FLSA Enterprise Engaged In Commerce.* In the context of FLSA enterprise coverage, the Ninth Circuit has rejected the coming-to-rest doctrine. That doctrine states that goods that had originally moved in interstate commerce, but then came to rest prior to intrastate

---

[29] "Employ" under FLSA "includes to suffer or permit to work": 29 USC §203(g).

handling and sale, lose their interstate character[30]. In the Ninth Circuit there is "no requirement that the goods have a present involvement in interstate commerce when they are handled or sold"[31]. FLSA's definition of "enterprise engaged in commerce" specifically states that an enterprise's employees are engaged in commerce if they handle, sell, or work on goods that were moved in commerce "by any person"[32]. Plaintiff's accompanying Affidavit establishes Defendant Wilfredo Gallo, Defendant TA and Defendant TV employed employees who were, and are, engaged in commerce under the first prong of §203(s)(1)(A)(i).

*Defendants' Presently Available Partial Federal Income Tax Returns*. Based on partial federal income tax returns, corporate defendant Taco Valley, Inc. ("TV" or "Taco Dos") does not have annual sales in excess of $500,000 to satisfy the enterprise coverage requirements under 29 USC §203(s)(1)(A). TV was Garcia's primary work situs in 2013-2015. Defendant Taco Azteca, Incorporated ("TA") appears to have had annual sales in excess of $500,000 during federal corporate tax years 2013-2015. The relevant legal issue is whether TV and TA constitute a "single enterprise" under 29 USC §§ 203(d) and (r) for overtime purposes under 29 USC § 207 purposes[33] (and in turn for AWHA purposes); and if so, whether that "single enterprise" had annual sales receipts of $500,000 or more during the relevant time period (here 2013-2015).

---

[30] *Litzendorf*, at *5 (citing *Donovan v. Scoles*, 652 F.2d 16, 18 (9th Cir. 1981) ("*Donovan*"), and 29 CFR §779.242)).

[31] *Donovan*, 652 F.2d at 18.

[32] *Litzendorf*, at *5 (citing 29 USC §203(s)(1)(A)(i)).

[33] *Chao*, 346 F.3d at 914-915.

In the Ninth Circuit, it is firmly established if two entities constitute a "single enterprise" under FLSA, it is immaterial whether one of those two entities fails to satisfy the annual revenue requirements: the relevant inquiry is whether the "single enterprise" satisfies the annual revenue requirements[34].

"'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose"[35]. "If these three elements---related activities, unified operation or common control and common business purpose—are present, different organizational units are grouped together for the purpose of determining FLSA coverage"[36].

The activities of two companies are "related" if they are "the same or similar"[37]."'Common' control…exists where the performance of the described activities [is] controlled by one person or by a number of persons, corporations, or other organizational units acting together"[38]. "[A] common business purpose is generally found where there are related activities and common control"[39].

DEFENDANTS' LABELLING GARCIA AFTER THE FACT AS A KITCHEN
MANAGER AT DEFENDANTS' TV ESTABLISHMENT DOES NOT MAKE

---

[34] *Chao*, 346 F.3d at 914-915 (observing "if A-One and Alternative constitute for purposes of the FLSA a 'single enterprise', it is irrelevant whether Alternative alone satisfied the revenue requirement").

[35] 29 USC §203(r)(1).

[36] *Chao*, 346 F.3d at 915 (citing *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973)).

[37] *Chao*, 346 F.3d at 915.

[38] *Id.* (quoting 29 CFR §779.221: "'control'…includes the power to direct, restrict, regulate, govern, or administer the performance of the activities").

[39] *Id.* (citing *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 848 (8th Cir. 1975)).

GARCIA'S COOK POSITION EXEMPT FROM OVERTIME UNDER FLSA AND AWHA WHERE GARCIA'S PRIMARY DUTIES WERE MANUAL COOKING/CLEANING PRODUCTION DUTIES

Under FLSA, Defendant TV is an "establishment"[40], not an "enterprise"[41]. But Defendant TV and Defendant TA together constitute a "single enterprise" under FLSA.

For the first time, in the course of this litigation, Gallo labels Garcia a "kitchen manager" when Garcia worked at Defendant TV's restaurant establishment during 2013-2015. Gallo claims Garcia was exempt from OT requirements under FLSA and AWHA. But Gallo's post hoc labelling of Garcia's cook position as TV kitchen manager does not render Garcia's cook position exempt from OT provisions. 29 CFR §541.2 **Job titles insufficient**[42] makes it clear an employer's self-serving job title does not make an employment position exempt from OT requirements. At deposition Gallo testified payment of a salary alone renders an employee exempt from OT requirements under

---

[40] 29 CFR §779.203 Distinction **between "enterprise", "establishment", and "employer"** ("...The term *establishment* means a *distinct physical place of business* rather than *an entire business or enterprise* (See §779.23)(italics in original)".

[41] *E.g.*, 29 USC §203(s)(1) deals with an "[e]nterprise engaged in commerce or in the production of goods with commerce", and 29 USC §203(s)(2) identifies a specific type of "establishment" which "shall not be considered to be an enterprise". Defendant TV is not such an excluded "establishment", namely

[42] 29 CFR §541.2 **Job titles insufficient** states: "[a] job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part". In other words, there is a two part test: (1) a salary requirement; and (2) a duties requirement.

FLSA and AWHA[43]: Gallo recklessly maintains that misconception, willfully oblivious to FLSA OT requirements, even after more than one (1) year of representation by an attorney.

There is no GIMF that Garcia's duties as cook at Defendant TV were primarily manual production duties, namely preparing food and keeping Garcia's TV kitchen area clean. FLSA regulations make clear FLSA OT exemptions do not apply to "blue collar" employees who primarily work with their hands[44]. The evidence is undisputed Garcia's primary work duties were manual and "blue collar": the evidence is undisputed Garcia primary work duties involved worked with his hands, preparing food for service, and then manually keeping his kitchen area clean, as part of Garcia's repetitive, primary cooking and cleaning duties, which Garcia performed on a routine, recurring daily basis as a cook at Defendant TV's establishment (and at Defendant TA's establishments)

The FLSA provides that employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular rate[45]. Persons employed in a "bona fide...administrative capacity", however, are exempted from the overtime pay requirements"[46].

---

[43] Gallo Deposition at 65.

[44] 29 CFR §541.3 **Scope of the section 13(a)(1) exemptions** states in part: "(a) The section 13(a)(1) exemptions and the regulations in this part do not apply to manual laborers or other 'blue collar' workers who perform work involving repetitive operations with their hands, physical skill and energy".

[45] 29 U.S.C.§207(a)(1).
[46] 29 U.S.C.§213(a)(1).

*Required Elements For Exempt FLSA Administrative Position.* Defendants must satisfy a three-part test under 29 CFR §541.200 to show Garcia's cook position was an exempt administrative position. Undisputed facts show Defendants cannot satisfy the requirements of 29 CFR §541.200. To fall within the meaning of an "employee employed in a bona fide administrative capacity", an employee's job duties and compensation must meet all of the following tests:

> 1.    The employee must be compensated on a salary or fee basis as defined in the regulations at a rate not less than $455 per week;

> 2.    The employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> 3.    The employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance[47].

An employee's primary duty is "the principal, main, major or most important duty that the employee performs"[48]. Garcia's principal duties were cooking and keeping the kitchen area clean. "The FLSA is to be construed liberally in favor of employees;

---

[47] 29 C.F.R. §541.200 **General rule for administrative employees**.

[48] 29 C.F.R. §541.700 **Primary duty** states in part: "(a) To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work. The term 'primary duty' means the principal, main, major, or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole".

exemptions are narrowly construed against employers"[49]. "The employer bears the burden of establishing that it qualifies for an exemption under the Act"[50]. "FLSA exemption will not be found 'except [in contexts] plainly and unmistakably within [the given exemption's] terms and spirit"[51]. There is no GIMF: Defendants cannot sustain their burden of proof to show Garcia's cook duties were exempt from OT requirements.

The administrative exemption under FLSA is "limited to those employees whose primary duty relates "to the administrative as distinguished from the production operations of a business"[52]. This "production versus administrative" dichotomy is intended to distinguish "between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself'"[53]. This dichotomy is "determinative if the work 'falls squarely on the production side of the line'"[54]. That dichotomy is determinative here. Evidence is undisputed Garcia's primary work duties were cooking and cleaning the kitchen area, which duties "fall[] squarely on the production side of the line"[55]. There is no GIMF Garcia's primary

---

[49] *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453(1960)).

[50] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016).

[51] *Haro v. City of Los Angeles*, 745 F.3d 1249, 1256 (9th Cir. 2014).

[52] 69 Fed. Reg. 22122, 22141 (April 23, 2004), quoting the 1949 Weiss Report.

[53] *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002) ("*Bothell*"), quoting *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990).

[54] *Bothell*, 299 F.3d at 1127.

[55] *See e.g.*, *Wong v. HSBC Mortgage Corp.*, 2008 WL 753889, at *7 (N.D. Cal. 2008) (granting summary judgment to plaintiffs with regard to the administrative exemption because "defendants have not identified any evidence to support a finding that plaintiffs' primary duty is something other than sales").

work duties at Defendant's TV establishment "fall[] squarely on the production side of the line".

*Required Elements For Exempt FLSA Executive Position.* "The criteria provided by [FLSA] regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act"[56]. In addition to paying an employee a salary, the other requirements for an exempt FLSA executive position are:

> Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> Who customarily and regularly directs the work of two or more other employees; and
>
> Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight[57].

Garcia's primary cooking/cleaning duties at TV did not have to do with management of the business. Garcia did not "customarily and regularly direct[] the work of two or more other employees". For most the 2013-2015 period of time at TV, only Anna Wheeler and Garcia worked at that establishment. Garcia did not have hiring and

_____

[56] *Bothell*, 299 F.3d at 1125 (quoting *Mitchell v. Williams*, 420 F.2d 67, 69 (8th Cir. 1969)).

[57] 29 CFR §541.100 **General rule for executive employees**.

firing authority. On one occasion Gallo specifically told Garcia Anna Wheeler "was the boss", and Garcia was "just a cook".

Under AWHA "[t]he burden is on the employer to prove beyond a reasonable doubt that the employee is exempt"[58]. Defendants cannot present proof beyond a reasonable doubt Garcia's primary cook duties at TV were exempt from OT requirements. Under AWHA "[e]xemptions are to be narrowly construed against the employer"[59]. "Whether an employee falls within an employee exemption from overtime pay is a mixed question of law and fact"[60]. Under AWHA "an individual employed…in a bona fide executive, administrative…capacity" is exempt from overtime compensation[61], which terms "bona fide executive, administrative…capacity" have "the meaning and shall be interpreted in accordance with 29 U.S.C. 201—219 (Fair Labor Standards Act of 1938), as amended, or the regulations adopted under those sections"[62]. Because Garcia's TV cook position was not exempt under FLSA, Garcia's TV position was not exempt under AWHA either.

---

[58] *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 884 n. 11 (Alaska 2004) ("*Fred Meyer*") (citing *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1371-72 (Alaska 1993)).

[59] *Id*; *see also Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 308 (Alaska 2014) ("*Alder*") ("Under both state and federal law, exemptions 'are to be narrowly construed against the employer'. Under both laws, the burden of proof is on the employer to prove that an exemption applies").

[60] *Alder*, 338 P.3d at 307.

[61] AS 23.10.055 **Exemptions; Compensation of Executives, Administrators,** and **Professionals,** (9)(A).

[62] AS 23.10.055(c)(1).

THERE IS NO GIMF DEFENDANTS HAVE SHOWN WILLFUL DISREGARD FOR FLSA REQUIREMENTS, INCLUDING WILLFULLY MISCLASSIFYING GARCIA'S TV JOB DUTIES AS EXEMPT FROM OT REQUIREMENTS, TRIGGERING APPLICATION OF AN EXTENDED 3-YEAR FLSA STATUTE OF LIMITATIONS

To show willfulness, a plaintiff must demonstrate that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"[63].[64] An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts "willfully", as will extend the statute of limitations to allow compensation or overtime pay for three years back from the filing date of the FLSA suit[65]. An employer must take "affirmative action to assure compliance[]"[66]. It is sufficient for an employee to show an employer knew the FLSA "was in the picture" and was aware of the Act's possible application to its employees[67]. To paraphrase the Ninth Circuit,

> [Defendants] w[ere] on notice of [their] FLSA requirements, yet took no affirmative action to assure compliance with them. To the contrary, [Defendants'] actions may more properly be characterized as attempts to avoid compliance, or to minimize the actions necessary to achieve compliance[68].

[63] *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677 (1988).

[64] *Donovan v. McKissick Prods. Co.*, 719 F.2d 350 (10th Cir. 1983).

[65] *Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014)("*Haro*")(citing *Alvarez IBP, Inc.*, 339 F.3d 894, 906-09 (9th Cir. 2003)("*Alvarez*")).

[66] *Alvarez*, 339 F.3d at 909.

[67] *Donovan v. McKissick Prods. Co.*, 719 F.2d 350 (10th Cir. 1983).

[68] *Alvarez*, 339 F.3d at 909 (holding "[t]he district court appropriately applied §255's three-year statute of limitations to [employer's] willful conduct").

Like the employer in *Haro*, Defendants' conduct was willful because "at no time" did Defendants "take any steps to obtain an opinion letter from the Department of Labor regarding [Garcia's] positions", and Defendants "ignor[ed] red flags and fail[ed] to make an effort to examine the positions at issue in this case", thus "show[ing] willfulness"[69]. Gallo's deposition testimony and Defendants' litigation conduct reflect Defendants' continued "knowing or reckless disregard for the matter of whether [Defendants'] conduct was prohibited by [FLSA]"[70].

Defendants' conduct shows willful disregard under FLSA. Defendants incorrectly averaged Garcia's work hours over two-week pay periods, instead of calculating OT owed to Garcia on single workweek basis. Gallo intentionally treated Defendant TA and Defendant TV as separate employers for OT purposes, even though Defendants' Answer admits TA and TV were Garcia's joint employer. Joint employers must aggregate an employee's work hours under FLSA and AWHA[71].

Defendants willfully treated Garcia's work hours for TV as separate from Garcia's simultaneous work hours for TA, even though Gallo routinely transferred employees (including Garcia) between TA and TV work locations. Gallo recklessly classified Garcia

---

[69] *Haro*, 745 F.3d at 1258.

[70] *Richland Shoe,* 486 U.S. at 133.

[71] *See* 29 CFR §791.2(a): "…if the facts establish that the employee is employed jointly by two or more employers…all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act".

as exempt when working at TV, even though Gallo classified Garcia as non-exempt when working at TA, and even though Garcia's work duties as cook were virtually the same at both TA and TV. FLSA's three (3) year statute of limitations applies, based on Defendants' willful FLSA violations[72].

On August 30, 2017 Garcia took the deposition of Defendant Wilfredo Gallo ("Gallo"). Gallo testified he held a job in the late 1990s' where he was paid overtime. Gallo testified he was aware of the general federal overtime requirements to pay overtime compensation to non-exempt employees who worked more than 40 hours a week. Gallo testified he was also aware of the requirement under Alaska wage and hour law to pay non-exempt employees overtime compensation for hours worked over eight (8) in a single work day.

On August 30, 2017 Garcia also took the deposition of Yolanda Casillas. Ms. Casillas testified she contacted the State Department of Labor annually, starting in about 2007. Ms. Casillas stated she would obtain wage and hour posters from the Department of Labor, and post them at Defendants' work locations in Fairbanks and in North Pole. Ms. Casillas testified she was also aware of the federal requirement to pay overtime to non-exempt employees working more than 40 hours in a workweek. Ms. Casillas also

---

[72] *See Hutka v. Sisters of Providence in Washington*, 102 P.3d 947, 961 (Alaska 2004)(holding that where trial court found "it does appear more likely than not that the employer was testing the line and had reason to believe that there was no exemption applicable to [employee] Hutka", concluding that finding " is tantamount to a finding that [employer] recklessly disregarded the applicable law, and thus committed a willful violation as that term has been defined in relation to the three-year statute of limitations"). At a bare minimum Defendants were at least "testing the [FLSA] lines".

testified she was aware of the state wage and hour requirement to pay overtime to employees working more than eight (8) hours in a single workday.

FLSA does not permit an employee to bring a private action for recordkeeping violations, but an employer's recordkeeping practices may nonetheless corroborate an employee's claims that an employer acted willfully under FLSA in failing to compensate for overtime[73]. In October 2016 the State Department of Labor forwarded an investigative letter to Defendant Taco Azteca, Inc. ("TA"), care of Defendant Wilfredo Gallo as TA's registered agent. Defendant Yolanda Casillas responded on behalf of Defendant TA, identifying Defendant Taco Valley, Inc. ("TV") as a "separate" corporation. Defendants were reckless in their record keeping. Defendants intentionally kept Garcia's 2016 TA work records separate from Garcia's 2016 TV work records, even though TA and TV were a single enterprise, and Garcia's 2016 joint employer. FLSA and AWHA require Defendants to aggregate Garcia's hours worked for Defendant TA and Defendant TV during the same workweek when calculating OT wages due.

Plaintiff took Defendant Wilfredo Gallo's deposition on August 30, 2017. Asked whether Defendant TA and Defendant TV were "interrelated", Defendant Gallo testified, "[n]o sir. There is two individual companies"[74]. Defendant Gallo's deposition testimony shows a reckless disregard for FLSA "single enterprise" requirements. Defendant Gallo's deposition testimony is also contrary to Defendants' binding judicial admissions, stemming from Defendants' admissions, set forth in Defendants' Answers to Par. 18, 20,

---

[73] *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 844 (6th Cir. 2001).
[74] Gallo Deposition (GD"), at 58.

and 21 of Garcia's FAC.

## DEFENDANT WILFREDO GALLO AND DEFENDANT YOLANDA CASILLAS WERE GARCIA'S EMPLOYER UNDER FLSA AND AWHA

FLSA defines an "employee" as "any individual employed by an employer". 29 USC §203(e)(1). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee". *Id.* at §203(d). To "employ" is "to suffer or permit to work". *Id.* at §203(g). The wide definitions of these FLSA terms have led courts to develop "expansive interpretation[s] of the definitions of 'employer' and 'employee' under the FLSA, in order to effectuate the broad remedial purposes of the Act"[75].

The AWHA does not define the term "employer". The AWHA states FLSA controls terms not defined under the AWHA[76]. To be held liable under the FLSA, a person must be an "employer", which §3(d) of FLSA defines broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee"[77]. The evidence is uncontradicted Gallo and Casillas were always "acting directly or indirectly in the interest of an employer in relation to [Garcia]"."Person" under FLSA "means *an individual,* partnership, association, corporation, business trust, legal representative, or any organized group of persons" (italics added)[78] Named individual

---

[75] *Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748m 754 (9th Cir. 1979).

[76] AS 23.10.145; *see Whitesides v. H-Haul Co. of Alaska,* 16 P.3d 729, 732 (Alaska 2001)(holding that AWHA "provides that terms not defined in the AWHA or in regulations adopted under it shall be defined as they are defined in the FLSA or the regulations adopted under it").

[77] 29 USC §213(d) (1994).

[78] 29 USC §203(a).

Case 4:17-cv-00005-TMB   Document 85   Filed 01/09/18   Page 39 of 49

Defendants Wilfredo Gallo and Yolanda Casillas fall squarely within FLSA definitions of "employer" and "person". In turn, as a matter of law, Gallo and Casillas also fall squarely within AWHA's undefined term "employer" (which is the FLSA definition pursuant to AS 23.10.145).

The U.S. Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer[79]. "Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy'"[80]. "An employee may simultaneously have multiple employers within the meaning of the FLSA"[81]. No GIMF exist that named Defendants Wilfredo Gallo and Yolanda Casillas were Garcia's FLSA employer.

### GARCIA'S 2016 HIRING AGREEMENT WITH DEFENDANTS FAILED TO COMPLY WITH 8 AAC 15.100(b) WRITTEN NOTICE REQUIREMENTS UNDER AWHA

Defendants rehired Garcia in July 2016. Garcia sign a 2016 hiring agreement with Defendants (Exhibit 8). Despite stating Defendants would pay Garcia $14 an hour in the hiring agreement, Defendant TA paid Garcia $2800 a month during 2016, and Defendant TV paid Garcia $14 an hour during 2016[82]. On its face Defendants' 2016 hiring

---

[79] *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427 (1973).

[80] *Herman v. RSR Security Services, Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

[81] *Inclan v. New York Hospitality Group, Inc.*, 95 F.Supp.3d 490, 507 (S.D. N.Y.2015).

[82] *See* Defendants' discovery document marked "D.3 -D.4", a letter written March 30, 2017 by accountant Kirsty Steele on Defendants' behalf;" D.3" states, in part, Defendant TV paid Garcia "2016-July-September $14/hour", and Defendant TA paid Garcia "2016 July-September $2,800/month".

agreement with Garcia failed to comply with 8 AAC 15.100(b)(1) written wage and hour notice requirements[83]. When an employer's hiring agreement fails to comply with 8 AAC 15.100(b)(1) requirements, 8 AAC 15.100(b)(2) explains how overtime will be computed: "if a contract fails to establish a fixed number of daily and weekly hours that the salary is intended to compensate, or if the actual hours of work deviate from the hours specified in the contract[84] without a corresponding adjustment in hourly pay, the salary will be considered to be compensation for an eight-hour workday and 40-hour workweek, and overtime will be computed on that basis".

During 2016 Defendant TA paid Garcia a salary but Defendant TV paid Garcia an hourly wage. Because Defendant TA and Defendant TV were Garcia's joint employer "at all times pertinent" (including 2016), all compensation received by Garcia from both joint employers must be aggregated, for each workweek, to arrive at a hourly rate, and then to arrive at an overtime rate (at 1 ½ times the hourly rate) for each 2016 workweek.

---

[83] 8 AAC 15.100(a)(1) states "the employment contract must be in writing and must set out the specific number of straight time and overtime hours the employee is expected to work each day and each week; the contract must establish a regular straight time hourly rate of pay and the appropriate overtime rate with respect to the salary to be paid and the number of hours to be worked".

[84] Garcia's 2016 hiring agreement with Defendants (Exhibit 8) contained no number of "hours specified in the contract".

During Garcia's entire employment with Defendants, Defendants failed to comply with 8 AAC 15.160(h)(1) and (12)[85] written wage and hour notice requirements also.

## WHEN AN EMPLOYEE IS ENTITLED TO DAMAGES UNDER FEDERAL AND STATE WAGE LAWS THAT EMPLOYEE MAY RECOVER UNDER THE STATUTE WHICH PROVIDES THE GREATEST AMOUNT OF DAMAGES

"[W]here a plaintiff is entitled to damages under both federal and state wage laws, a plaintiff may recover under the statute which provides the greatest amount of damages"[86]. Undisputed evidence allows Garcia to recover damages under both FLSA and AWHA. The law providing for the greatest recovery should govern the calculation of Garcia's damages.

## DEFENDANTS ARE LIABLE TO GARCIA FOR UNPAID "OFF-THE-CLOCK" WORK FOR GARCIA'S REGULAR DELIVERIES OF TV'S DAILY RECEIPTS TO TA ON AIRPORT WAY

Defendants failed to keep accurate records of Garcia's time spent, regularly and routinely delivering TV's daily receipts to TA on Airport Way. When an employer fails to keep accurate records of an employee's work time, an employee need only establish "that he has in fact performed work for which he was improperly compensated", and "produces sufficient evidence to show that amount and extent of that work as a matter of

---

[85] 8 AAC 15.160(h)(1) and (12) requires an employer, "for each pay period", to provide "a written or electronic statement of earnings and deduction" to the employee, including notice of the employee's "rate of pay" under (1) and "straight time and overtime hours actually worked in the pay period".

[86] *Fujun Jiao v. Shi Ya Chen*, 2007 WL 4944767, at *17 (S.D.N.Y. March 30, 2007).

just and reasonable inference"[87]. Garcia's Affidavit dated January 8, 2018 carries that burden. The employer bears his own burden under state and federal law of maintaining "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him"[88].

It is axiomatic that under FLSA employers must pay employees for all hours worked[89]. "Work" is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer"[90].

Garcia's routine deliveries of TV's daily receipts to TA constitute compensable work time under FLSA regulations[91], despite Defendants' failure to maintain34 records for Garcia's regular "off-the-clock" work time to deliver TV's daily receipts[92].

---

[87] *Anderson v. Mt. Clemens Pottery Co.*, 328 US 680, 687 (1946)("*Anderson*").

[88] 29 USC §211(c).

[89] 29 USC §§203(o); 206; 207.

[90] *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *Alvarez*, 339 F.3d at 902.

[91] *See* 29 CFR §12 **Work performed away from the premises or job site** ("If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked"); 29 CFR § **Duty of management** ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed").

[92] *See* 29 CFR §785.47 **Where records show insubstantial or insignificant periods of time** ("An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him"); *see also* 29 CFR §785.38 **Travel that is all in the day's work** ("Time spent by an employee in travel as

43

Defendants have record-keeping duties under AWHA requiring an employer to provide notice to employees of "hours actually worked" for each pay period. 8 AAC.15.160(h) states in part:

> An employer shall give each employee a written or electronic statement of earnings and deductions for each pay period. The statement of earnings and deductions must contain the employee's (1) rate of pay; (2) gross wages; (3) net wages; (4) beginning and ending dates of the pay period;...(12) straight time and overtime hours actually worked in the pay period...

8 AAC 15.160(h)(12) requires an employer to communicate the actual hours worked for each pay period to its employees[93]. Defendants never complied with this AWHA wage and hour regulation during Garcia's employment with Defendants.

*Garcia's Regular Deliveries Of TV Receipts To TA Were Not De Minimis.* In determining whether otherwise compensable time is *de minimis*, the Ninth Circuit considers: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work[94]. Considering these factors, Garcia's regular delivery of TV's daily receipts to TA, on Airport Way during 2013-2016, were not *de minimis*.

---

part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked").

[93] *Air Logistics of Alaska, Inc . v. Throop,* 181 P.3d 1084, 1090 n. 6 (Alaska 2008) ("*Throop*").   .

[94] *Lindow v. U.S.*, 738 F.2d 1057, 1063 (9th Cir. 1984).

44

Passage of the Portal-to-Portal Act "did not otherwise change [the U.S.Supreme] Court's descriptions of 'work' and 'workweek' or define 'workday'. Regulations promulgated by the Secretary of Labor shortly thereafter concluded the [Portal-to-Portal] Act did not affect the computation of hours within a 'workday', 29 CFR §790.6(a), which includes 'the period between the commencement and completion' of the 'principal activity or activities'.[29 CFR] §790.6."[95]

Section 4 of the Portal-to-Portal Act exempts employers from employees' travel to and from place of performance of principal activity or activities and as to activities which are "preliminary or postliminary to said activity or activities", unless otherwise provided by contract or custom; and the terms "principal activity or activities" embrace all activities which are an integral and indispensable part of a principal activity[96].

Delivery of TV receipts to TA on Airport Way was an integral and indispensable part of Garcia's principal activities. Assuming without conceding such regular delivery of TV daily receipts was not an integral and indispensable part of Garcia's principal activities, then such uncompensated work was compensable "by custom" under 29 USC §254(b)[97] and (d)[98]. Defendant Wilfredo Gallo testified he personally picked up TV's

---

[95] *IBP, Inc. v. Alvarez,* 546 U.S. 21, 22 (2005).

[96] *Steiner v. Mitchell,* 350 U.S. 247, 252-253 (1956)(interpreting 29 USC §254(a)).

[97] 29 USC §254(b) **Compensability by contract or custom** states in part: "…the employer shall not be so relieved if such activity is compensable by either---…(2) a custom or practice in effect, at the time of such activity a*t the establishment* or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract…"; Defendant TV is an "establishment" under the Act.

daily receipts, and delivered them to TA on Airport Way, after TV first opened. Gallo testified he holds the status of an employee.

## GARCIA IS ENTITLED TO UNPAID OT COMPENSATION FOR AUTOMATICALLY DEDUCUTED "ON CALL" MEAL TIMES WORKED AT DEFENDANTS' TV ESTABLISHMENT

Undisputed evidence shows Garcia was "on-call" as a cook at Defendants' TV establishment, even during meal times. Defendants' computerized time system automatically deducted time (either 30 minutes or 20 minutes) from an employee's work hours, when that employee worked more than eight (8) consecutive hours in a workday. Garcia routinely worked more than eight (8) consecutive hours in a single workday at TV. FLSA regulations consider such unrelieved time as compensable "on-call" time, even during meal times[99].Garcia is requesting unpaid OT for unpaid TV "waiting time" because Garcia could not effectively use the time for his own purposes[100].

---

Defendant Wilfredo Gallo established the "custom" of transporting TV's daily receipts back to TA on Airport Way after TV first opened.

[98] 29 USC §254(d) **Determination of time employed with respect to activities** states in part: "...there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of (b) and (c) of this section".

[99] *See* 29 CFR §785.17 **On-call time** ("An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call'"); see also 29 CFR §785.19 **Meal** ("The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating").

[100] *Throop*, 181 P.3d at 1090("The AWHA requires an employer to pay employees at the overtime rate for '*hours worked*' in excess of eight hours a day...it is necessary to

8 AAC 15.100 (c) states:

> When computing an employee's hours for the purpose of determining overtime, the employer shall count all hours the employee worked during that week including periods of 'on call' and 'standby or waiting time' required for the convenience of the employer which were a necessary part of the employee's performance of the employment. However, if the employee is completely relieved of all duties for 20 minutes or more during which the employee may use the time effectively for the employee's own purposes, then those periods need not be counted.

"'[O]n-call' means time that an employee is required to remain on call on the employer's premises or other place of employment or so close to them that the time cannot be used effectively for the employee's own purposes, but does not include the time an employee is not required to remain on or near the employer's premises..."[101]. "'[S]tandby or waiting time' means time that an employee is required to be at or near the place of employment and is required to wait for work or an assignment, whether or not because of shutdown or repair, and during which the time cannot be used effectively for the employee's own purposes"[102].

In late 2013 Garcia was the only cook at Defendants' TV establishment. The evidence is uncontradicted Garcia was expected to prepare an order at any time during the workday at TV. Garcia's TV working conditions were on-call" or "standby or waiting

---

determine whether the employees were actually working...The key question...is to what extent employees can use the time for their own purposes")(italics in original).

[101] 8 AAC 15.910(a)(9).

[102] 8 AAC 15.910(a)(13).

time". Garcia was required to respond to a cooking order immediately: Garcia could not use his work time "effectively" for Garcia's "own purposes". Defendants are liable to Garcia for work time automatically deducted from Garcia's work hours on Garcia's workdays when Garcia worked in excess of eight (8) consecutive hours.

### GARCIA IS ENTITLED TO PREJUDGMENT INTEREST ON UNPAID OT WAGES UNDER AWHA BUT NOT UNDER FLSA, ASSUMING THE COURT ALSO AWARDS LIQUIDATED DAMAGES

The FLSA prohibits both an award of liquidated damages and prejudgment interest ("PJI").[103]. In contrast, PJI is properly awarded on an employee's compensatory damages under the AWHA:

> When awarding prejudgment interest, a court does not intend to penalize the losing party, but rather intends to compensate the prevailing party for losing the use of [his] money between the date [he] was entitled to it and the date of judgment...Accordingly, prejudgment interest is generally not awarded on punitive damages...However, where an award consists of both compensatory and punitive elements, to fail to award prejudgment interest on the compensatory portion would be unfair to the injured party...

> An employer who violates the AWHA must pay two types of damages: compensatory damages in the amount of unpaid overtime compensation, and liquidated damages in the same amount. AS 23.10.110(a)...We have held that under the AWHA, liquidated damages are a form of punitive damages, not a substitute for compensatory damages...

---

[103] *Hutka v. Sisters of Providence in Washington*, 102 P.3d 947, 960 (Alaska 2004)(holding trial court committed plain error in awarding both liquidated damages and PJI under FLSA).

In this case, the trial court limited prejudgment interest to the compensatory part of the [AWHA] award. *[Employer] denied the [employees] not only their overtime pay but the right to use this money. The award of prejudgment interest thus made the [employees] whole, compensating them for this additional loss.* The trial court was correct to award this sum[104] (italics added).

Garcia may not recover twice under both the FLSA and the AWHA[105]. While an employee is not entitled to prejudgment interest under the FLSA when a court grants liquidated damages, an employee is entitled to prejudgment interest under the AWHA[106]. Prejudgment interest applies only to compensatory damages; liquidated damages are excluded from prejudgment interest calculations[107].

*Conclusion.* The Court should grant Garcia's dispositive motion.

DATED at Fairbanks, Alaska this 9th day of January, 2018.

/s/

_____
James M. Hackett/ABN 7106014
Attorney For Plaintiff Garcia

---

[104] *Bobich v. Stewart*, 843 P.2d 1232, 1236-1237 (Alaska 1992).

[105] *Morales v. MW Bronx, Inc.*, No. 15-cv-6296(TPG)(S.D.N.Y. Jan. 26, 2017) ("*Morales*"), 2016 WL 4084159, *8 (interpreting the New York Labor Law and holding employees could not recover twice under both the FLSA and the NYLL for the same injury)(citing *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-cv-3725, 2010 WL 4159391, *2 n. 2 (S.D N.Y. Sept. 30, 2010).

[106] *Bobich*, 843 P.2d at 1236-1237; *Morales*, *10 (holding employees entitled to prejudgment interest under the NYLL).

[107] *Bobich*, 843 P.2d at 1236-1237; see also *Morales* (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-cv-8195, 2012 WL 1660341, *11(S.D.N.Y. May 14, 2012)).