**JAMES M. HACKETT**
**401 Eleventh Avenue**
**Fairbanks, Alaska 99701**
**(907) 456-3626**
**jhackettlaw@aol.com**

THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

MIGUEL A. GARCIA,              )
                                    )
        Plaintiff,           )
                                    )       **DEFENDANT WILFREDO**
                                    )       **GALLO'S RULE 30(b)**
                                    )       **DEPOSITION EXCERPTS**
WILFREDO GALLO, an individual,  )
YOLANDA CASILLAS, an individual,  )
TACO VALLEY, INC., TACO AZTECA,  )
INCORPORATED, and John Does 1-3,  )
        Defendants,       )
_____)

Case No. 4:17-cv-0005-TMB

Plaintiff relies on the following excerpts from the Rule 30(b) deposition of Defendant Wilfredo Gallo ("Gallo") taken on August 30, 2017:

Page Nos: 9-10; 12; 17; 25; 27-30; 34-35; 38-39; 57-58; 65; 71-72; 74.

These excerpts are supported by Court Reporter Marci Lynch's attached CERTIFICATE dated September 18, 2017.

DATED at Fairbanks, Alaska this 9th day of January, 2018.

                LAW OFFICE OF JAMES M. HACKETT
                /s/

                _____
                James M. Hackett
                Attorney for Plaintiff Garcia

```
 1            IN THE UNITED STATES DISTRICT COURT

 2          FOR THE DISTRICT OF ALASKA AT FAIRBANKS

 3   MIGUEL A. GARCIA,                 )
                                       )
 4               Plaintiff,            )
                                       )
 5   vs.                               )
                                       )
 6   WILFREDO GALLO, an individual,    )
     YOLANDA CASILLAS, an individual,  )
 7   TACO VALLEY, INC., TACO AZTECA,   )
     INCORPORATED, and John Does 1-3,  )
 8                                     )
                 Defendants.           )
 9   _____   )
     Case No.: 4:17-cv-0005-TMB

10
                 DEPOSITION OF WILFREDO GALLO
11                    August 30, 2017

12   APPEARANCES:

13        FOR THE PLAINTIFF:      JAMES M. HACKETT
                                  Attorney at Law
14                                401 Eleventh Avenue
                                  Fairbanks, Alaska  99701
15                                (907) 456-3626

16        FOR THE DEFENDANT:      KENNETH L. COVELL
                                  Attorney at Law
17                                712 8th Avenue
                                  Fairbanks, Alaska  99701
18                                (907) 452-4377

19        ALSO PRESENT:          Yolanda Casillas

20                    *  *  *  *

21

22

23

24                                        ORIGINAL

25
```

```
 1        every place.
 2   Q    Let me back up.  When -- before you opened your business
 3        with Ms. Casillas in Fairbanks in --
 4   A    I opened my own business --
 5   Q    Right.  But I'm saying --
 6   A    -- she was helping me work.
 7   Q    I'm saying before that time, had you ever worked at a job
 8        where you were paid overtime?
 9   A    Yes.
10   Q    All right.  What types of jobs did you work where you were
11        paid overtime?
12   A    I used to work as a sales rep for Wal-Mart; which, you
13        know, overtime was really rare.  But cooking, washing
14        dishes, and --
15   Q    Well, let's just break it down.  So I'm trying to
16        get -- and you're -- you worked as a -- so you did,
17        occasionally, get overtime when you worked for Wal-Mart;
18        is that --
19   A    Occasionally, yes.
20   Q    And what years were those?
21   A    1997.
22   Q    Okay.  And was that a short -- was that a short employment
23        period?
24   A    Yes, sir.
25   Q    All right.  And then, thereafter, you received overtime
```

9

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 3 of 22

1       when you worked as a cook or a dishwasher; is that

2       correct?

3   A   No, I didn't.

4   Q   Pardon?

5   A   No, I didn't.

6   Q   I'm sorry, I thought --

7   A   Occasionally.  I said Wal-Mart, yes.

8   Q   Wal-Mart.  But --

9   A   Everywhere else, I never got -- I always got paid by

10      salary.

11  Q   Okay.  So was it -- so how many jobs did you work where

12      you were paid overtime, one or more than one?

13  A   One.

14  Q   Okay.  And --

15  A   Because if I work overtime, by the system, I wouldn't be

16      where I'm at right now.

17  Q   But as a result of working that job, did you become aware

18      of the fact that there were certain overtime laws at

19      play --

20  A   Yes, sir, I'm aware of it.

21  Q   All right.  And you --

22  A   I'm a legit business.  I'm not -- you know, I'm not trying

23      to exploit people.

24  Q   All right.

25  A   I'm trying to do the best I can and consult with my CPA or

10

```
 1              MR. HACKETT:  Yeah.
 2    Q    I'm giving you Exhibit Number 4 and asking you if that's
 3         the one that you're talking about.
 4    A    I'm asking about his actual W-2s because it shows where he
 5         worked at Taco Azteca, Incorporated and, at the end, at
 6         Taco Azteca Dos.
 7    Q    Okay.  At the end, we're talking about 2016; is that
 8         correct?
 9    A    No, no, no.  2016, he worked at Taco Azteca, Inc., as a
10         cook.
11    Q    Oh.
12    A    As a cook.
13    Q    All right.  And, as a cook, is it your testimony he was
14         entitled to overtime in 2016?
15    A    He never worked overtime.  I had him at four days, four
16         days a week, and he never did overtime.  He went and
17         complained at the Labor Department that he wasn't getting
18         any overtime.  We got them all of the documents they asked
19         for.  We sent them to Labor Department -- let me finish.
20         Then they said, okay, you owe him 280-something dollars or
21         215.  We made him the check.  He picked it up, cashed it,
22         end of discussion.  We got the letter back, and I guess
23         that's what it was.
24    Q    Okay.  Well, we'll get there.  I'm asking you a different
25         question.
```

                                                                    12

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 5 of 22

| | | |
|---|---|---|
| 1 | A | Correct, yes. |
| 2 | Q | All right.  These -- |
| 3 | A | I wasn't present at the time, though. |
| 4 | Q | Okay.  But I'm -- but what I'm trying to get to is, these |
| 5 | | are the only two employment documents -- or might say the |
| 6 | | only two -- the only employment documents I've been given |
| 7 | | by your attorneys -- |
| 8 | A | That's all you asked for, I believe. |
| 9 | Q | No.  I asked for any and all employment documents.  Are |
| 10 | | you saying that -- |
| 11 | A | All employment documents? |
| 12 | Q | Any and all employment documents related to Mr. Garcia. |
| 13 | | Are you saying you have -- |
| 14 | A | No, those are the only two.  Those are the only two. |
| 15 | Q | Has Mr. Garcia ever had a position description for any job |
| 16 | | that he's had with the defendants? |
| 17 | A | Kitchen manager. |
| 18 | Q | I don't think we're communicating.  Is there something in |
| 19 | | writing where you told Mr. Garcia, you're the kitchen |
| 20 | | manager?  Have you seen any document where the words, |
| 21 | | kitchen manager, appear in employment documents? |
| 22 | A | No, I don't think so. |
| 23 | Q | All right.  So is it true that there is no written |
| 24 | | document describing for Mr. Garcia what his specific job |
| 25 | | duties were? |

17

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 6 of 22

1  Q    Yes.  And from what computer does this come from?

2  A    I believe this is from -- not -- well -- Robinson's --

3  Q    Well, look, you're -- again, the record should reflect

4       that you keep looking at Ms. Casillas, and I'm going to

5       object to this --

6  A    It's because I don't take care of the payroll.

7  Q    All right.  Well, then, just be honest.  Say -- if

8       you -- if she's a better witness to ask these questions --

9  A    Okay.  2011, it came out from Robinson's.

10          MR. COVELL:  All right.  Hang on -- hang on a minute.

11 And, Mr. Hackett, I don't think you're inferring dishonesty, but

12 object to the characterization of saying, just be honest on the

13 record.

14          MR. HACKETT:  No, I'm not saying --

15          MR. COVELL:  Okay.

16          MR. HACKETT:  -- he's being dishonest, I'm saying, if

17 you really don't know and if she's a better source of

18 information, please say so.  I don't want you guessing, and I

19 don't want you --

20 A    All right.  I don't recall.

21 Q    Okay.  All right.  Well, assuming -- that's fair enough.

22      But assuming that this is an accurate --

23 A    It is an accurate document, yes.

24 Q    All right.  Well --

25 A    It wasn't produced yesterday.

                                                            25

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 7 of 22

1  clarification?

2           MR. HACKETT:  I think you have a chance to ask some

3  questions, counsel.

4           MR. COVELL:  Fine.  Fine.

5  Q    Okay.  Here is -- let's go to Exhibit 8 and ask if you can

6       identify that, please.

7  A    Exhibit 8, yes.

8  Q    What is that, sir?

9  A    This is another document when he was hired on

10      7/5 -- 7/5/16.

11 Q    Yes, sir.  And were you part of that, or did Ms. Casillas

12      handle that?

13 A    I was not here, so -- but, before I left, I recall it was

14      a weekend.  He came up to the bar.  I was working at the

15      bar, and he came up to me and asked me for a job.  I said,

16      yes, that's fine.  I'm leaving tonight.  You come back and

17      talk to Yolanda.  You guys fill out the paperwork, and I'm

18      going to pay you $14 an hour and no more than 80 hours

19      every two weeks.  That is what -- I recall that

20      perfectly --

21 Q    Okay.

22 A    -- and that's when he only lasted five, six months.

23 Q    All right.  So when you say no more than 80 hours every

24      two weeks --

25 A    He was getting paid hourly.  I wasn't willing to give him

27

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 8 of 22

1      a position as a manager, and I wasn't willing to give him

2      any overtime.

3  Q   Okay.  So when you say you told him that he was -- in

4      other words, when he's -- did you tell him that directly

5      before he --

6  A   It was verbally agreed when he came back on Monday -- or I

7      don't know when that he came back -- and he was hired

8      and then --

9  Q   When you told him no more than 80 hours every two weeks,

10     in effect, you were telling him you were not going to pay

11     him overtime; is that correct?

12 A   No, sir.  I said, I will not give you more than 80 hours

13     every pay period, okay?  I wasn't denying -- if he would

14     work one hour overtime, I would pay him overtime, no

15     problem.  But he wasn't going to be on salary, because

16     that's what they wanted.  They wanted a salary.  Right

17     now, they're making 15, $1600 a month -- every two weeks,

18     I'm sorry, every pay period.

19 Q   So when you say you weren't going to pay him overtime,

20     were you --

21          MR. COVELL:  I'm going to object.  I think

22 characterizing his testimony as saying he wouldn't pay overtime

23 is incorrect.

24          MR. HACKETT:  No --

25          MR. COVELL:  I think characterizing it as saying he

28

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 9 of 22

1   was only going to get up to straight time hours but that if he

2   did work overtime an hour or two, he would still pay him.

3   A   Yes.

4           MR. COVELL:   Thank you.

5   Q   How were you -- when you used the -- when you used 80

6       hours, were you assuming that that meant 40 hours per

7       week?

8   A   I was assuming, yes, 40 hours per week.   That's what it

9       is.

10  Q   All right.   Can we go back and take a look at the summary,

11      please?

12          COURT REPORTER:   Was that in a different deposition?

13          MR. HACKETT:   It was, yes.   Yes, it was.

14  Q   I'm handing you what's been marked as Exhibit 2.   Can you

15      identify that, sir?

16  A   Yes, sir, I know what this is.

17  Q   What is that, sir?

18  A   The summary of Alaska Wages and Hour Act.

19  Q   Okay.   I'd like to direct your attention to the middle of

20      the page, and it's the words, overtime hours.   Do you see

21      those words?

22  A   Yes, sir.

23  Q   Let me read this into the record, and then I'll ask -- I'm

24      going to ask you a question about this.   It says, the

25      standard workweek shall not exceed 40 hours per week or

                                                                    29

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 10 of 22

1    eight hours per day.  Should an employer find it necessary

2    to employ an employee in excess of these standards,

3    overtime hours shall be compensated at the rate of one and

4    a half times the regular rate of pay.

5  A    Okay.

6  Q    That's what it says, correct?

7  A    Correct.

8  Q    So other -- were you aware of the fact that --

9  A    Yes, I was.

10 Q    You were aware of the fact that there's a difference

11       between federal law that's 40 hours overtime and state law

12       that's not only 40 hours a week, but also eight hours a

13       day.  Were you aware of that?

14 A    Yes, sir.

15 Q    And when did you first become aware of those overtime

16       requirements?

17 A    I've been in business for quite a while, so I believe, you

18       know, it's been quite a while.

19 Q    All right.  So you would say --

20 A    2007.

21 Q    All right.  So you've been aware of those overtime

22       requirements --

23 A    Yes, sir.

24 Q    -- for at least approaching a decade?

25 A    Yeah.

                                                              30

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 11 of 22

34

1    A    Correct.  She used to take care of my accounts.
2    Q    Okay.  Now, what I'd like to know is, since you're
3    familiar, somewhat, with these -- this summary of Alaska
4    Wage and Hour law and you're familiar with, you know,
5    federal and state overtime requirements, did you ever go
6    to the State of Alaska Department of Labor and ask them
7    whether or not any of your employees; specifically,
8    Mr. Garcia, was exempt from overtime?
9         MR. COVELL:  I'm going to have to object to the form
10   of the question because you said any employees and then you
11   said, specifically, Mr. Garcia, so --
12        MR. HACKETT:  Okay, I'll rephrase it.
13   Q    Did you ever ask for an opinion from the Department of
14   Labor, the State Department of Labor, whether or not
15   Mr. Garcia was exempt from overtime when he was employed
16   at Taco Valley or Taco Dos?
17   A    No, sir, I didn't.
18   Q    Did you ever approach the federal Department of Labor and
19   ask them for an opinion as to whether or not -- when
20   Mr. Garcia was employed at Taco Valley or Taco Dos,
21   whether he was exempt from overtime --
22   A    No, sir, I didn't.
23   Q    Did you ever ask anyone whether or not, in their opinion,
24   Mr. Garcia was exempt from overtime provisions when he
25   worked at Taco Valley and Taco Dos?

Gallo, Wilfredo (3)

1   A   No, sir, I didn't.

2   Q   Did you ever discuss that with Ms. Casillas?

3   A   No, sir, I didn't. I was making my own decisions.

4   Q   Did you ever -- did you ever tell -- did you ever discuss

5       with Mr. Garcia that you felt he was exempt from overtime

6       when he was employed at Taco Valley or Taco Dos?

7   A   Yes, sir, we discussed that. And the reason I gave him

8       salary is because they don't want the federal government

9       or the state to pull out so much. And since they all have

10      problems, they'd rather have a certain amount of money on

11      check and certain amount of money in cash, that way they

12      think they are saving money. But, no, you know.

13      That's -- that's what they do, and that's how we do it.

14      Inclusively -- you know, not too long ago, when he

15      came back to Taco Azteca, 3401 Airport Way, this last

16      time, he asked me to pay him in cash because he was behind

17      on his child support, and I did pay him in cash for the

18      first two weeks. The next time, I told him, you know

19      what, I am not going to -- I can't pay you cash anymore

20      because, you know, I don't have any money; I'm broke.

21      So then I proceeded to -- and you have the proof

22      right there -- make checks out to Mr. Pasquale Hermanas

23      (ph.), under his name, that way it went through the bank.

24      And then he would give the check to Miguel Achil-Garcia.

25      I did that for a month, and, after that, I said, no more.

35

1   A   They're accurate on the paychecks.  They're 100 percent

2       accurate, taking out the cash, of course.  The cash, it's

3       out of my pocket, out of my withdraws from the banks.

4       That's all.

5   Q   Well, I -- Mr. Garcia asked for all employment documents

6       that related to his employment and wages paid.  So you're

7       saying you have withdrawal statements that show the

8       amounts --

9   A   Not --

10  Q   -- of money that you paid Mr. Garcia?  And, assuming you,

11      I've asked -- counsel, I ask that it be produced.  They

12      were long overdue.  I've asked for all documentation

13      relating to wages months ago, so I'm asking for the

14      withdrawal statements that Mr. Garcia -- Mr. Gallo has

15      alluded to.

16  A   Are you talking months ago or years ago?

17  Q   Whatever your -- I don't know.  What time periods are you

18      talking about, Mr. Gallo?

19  A   Taco Valley.  That's it.  Because Taco Azteca, we've

20      actually paid him overtime already because he wasn't -- I

21      told him, no salary, no more than 80 hours, and that's

22      that.

23  Q   All right.  Let's talk about -- let's talk about

24      the -- let's talk about the time period when Mr. Garcia

25      worked at Taco Valley or Taco Dos.  That's the time period

38

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 14 of 22

1    you're saying -- are you saying -- you testified he was

2    your -- a co-manager.  Is that what you're -- was that

3    your testimony, sir?

4  A    Yes, sir, he was a manager.

5  Q    A co-manager with who?

6  A    I'm sorry?  He was -- he was a kitchen manager.

7  Q    A kitchen manager.

8  A    Yes.

9  Q    And what were his duties as kitchen manager?

10  A    Those duties -- about the time -- where is the 2011?

11        Right there.  Let me see that exhibit, what, 4?

12            MR. COVELL:  Yep.  Just a second.

13  A    I think it's this one right here.

14            MR. COVELL:  I think you were asking for --

15  A    No, no, no.  This --

16            MR. COVELL:  This one or --

17  A    And this one.

18            MR. COVELL:  This one?  Okay.

19  A    Because this is the summary -- that was the summary, okay.

20            MR. COVELL:  So these are copies of Exhibit 7 and

21  Exhibit 4 that Mr. Gallo is looking at.

22  A    Okay.  So, in 2011, his duties were, one, the kitchen.  By

23        that time, Mr. Santos Gonzalez, Jr. was the cashier.  Jose

24        Francisco Lerma was the dishwasher.  Luis Humberto was the

25        head cook, and then Mr. Garcia was, actually, kitchen

39

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 15 of 22

```
 1        assume you're also generally aware that, in some
 2        situations, you don't have to pay some people overtime,
 3        right?
 4   A    That is correct.
 5   Q    All right.  So focusing on that second category, did you
 6        ever hire or ask for a professional opinion, whether from
 7        an attorney, an accountant, or going to any federal or
 8        state agency to find out whether your view of a -- of
 9        people you didn't have to pay overtime was a correct view?
10   A    No, sir, I didn't.
11   Q    And let's just go -- while we're still on this -- still on
12        this particular document, if you go right in the middle of
13        the document, it says, compensation at the overtime rate
14        is not required in the following cases.  And the first
15        bold is, quote, by an employer who employs three or fewer
16        people in the regular course of business.  I'm assuming --
17   A    We had three or more, sometimes four.
18   Q    You've always had three or more?
19   A    Yes.
20   Q    And when you say we, you're talking about Taco Azteca,
21        Incorporated, correct?  And you have to answer audibly.
22   A    Taco Azteca, Incorporated and Taco Azteca -- Taco Valley,
23        which is Taco Azteca Dos.
24   Q    Right.  And they're interrelated, correct, in the sense
25        that --
```

57

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 16 of 22

1    A    No, sir.  There is two individual companies.

2    Q    I understand there are two separate --

3    A    Owned by the same person.  That's it.

4    Q    Yeah.  Well, okay.  There are two separate corporations on

5         paper, correct, sir?

6    A    Yes.

7    Q    But they have the common owner, which is you.

8    A    Yeah.  Correct.

9    Q    And I'm assuming that we've established that employees

10        that -- well, I mean, employees sometimes take vacations,

11        and they sometimes take days off, correct?

12   A    Yeah.

13   Q    And isn't it true that you, as the owner of both

14        companies, either yourself or through Ms. Casillas, decide

15        how to fill those things in, correct?

16             MR. COVELL:  Okay.  I'm going to object to the form

17   of the question --

18             MR. HACKETT:  Well, I'll withdraw it.

19             MR. COVELL:  -- because it was narrative and

20   compound.

21             MR. HACKETT:  All right.  Good objection.

22   Q    Isn't it true that employees from Taco Azteca on

23        Washington Plaza have worked at Taco Dos?

24   A    Yes, sir.

25   Q    And isn't it true that people from Taco Dos have worked at

58

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 17 of 22

1    the paperwork in the office.

2  Q   All right.

3          COURT REPORTER:   Exhibit 12.

4                    (Deposition Exhibit 12 marked)

5  Q   When you say she takes care of the paperwork, what types

6      of paperwork does she take care of?

7  A   Payroll, whatever letters come in -- for example, that

8      one -- and that's about it.  But I go through them.  I

9      mean, everything comes through me.

10 Q   All right.  You're the final --

11 A   Yes.

12 Q   You're the final authority.

13 A   Correct.

14 Q   And so in terms of whether or not an employee is entitled

15     to overtime, you're the final authority on that, too,

16     correct?

17 A   Well, it's either their decision or -- they don't -- they

18     don't work more than 40.  That is very simple.  If they

19     have a good position like a manager or in charge of the

20     kitchen staff, I give them salary.

21 Q   Is it your understanding that if you pay a salary that

22     that's the only requirement that -- that you need to do in

23     order not to pay the employee overtime?

24 A   From my understanding, yes, that's what I do.

25 Q   Okay.  Let me show you the next exhibit, Exhibit 12.  Can

65

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB  Document 90  Filed 01/09/18  Page 18 of 22

1       MR. COVELL:  So I think you're referring to --

2   Q   Well, look.  I'll ask -- I'll ask --

3   A   I have it.  I have it right here.

4   Q   I'll ask Ms. Casillas about it.

5   A   Okay.

6   Q   And if there's a different letter that hasn't been

7       produced, I'd ask that that be produced so we

8       don't -- aren't doing discovery during the deposition.

9       MR. COVELL:  Okay.  So, to my understanding, in good

10  faith, the whole Department of Labor file came from you to me,

11  and I also believe I got it independently.  And as far as I

12  know, those files match.

13      MR. HACKETT:  That's fine.

14      MR. COVELL:  So, as far as I know, all of those

15  papers are out in discovery.

16      MR. HACKETT:  All right.  All right, that's fine.

17  That's good.

18      MR. COVELL:  To my knowledge.

19      MR. HACKETT:  Good enough.

20  Q   All right.  So I'm just going to ask you a couple more

21      questions, and then we'll break for lunch and come back

22      about -- you know, in an hour or so.  So I take it, if one

23      were to summarize your testimony, your position is, let's

24      just start with the 2016 when Mr. Garcia came back to work

25      for the defendants for the last time.  Your position is

                                                              71

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB  Document 90  Filed 01/09/18  Page 19 of 22

1    that the check repre -- and the $233 check --

2  A   Correct.

3  Q   -- represents any and all overtime that you -- that

4      defendants owe Mr. Garcia for the 2016 period; is that

5      correct?

6  A   That is correct.

7  Q   All right.  If I understand your testimony correctly, your

8      position is that, when Mr. Garcia was working at Taco

9      Valley, also known as Taco Dos, in the approximate time

10     period of 2013 to 2015, that you owe him nothing -- no

11     overtime, whatsoever; is that correct?

12 A   That is correct.

13 Q   All right.

14 A   Everything's been paid for.

15 Q   Now -- and your further testimony is that, at no time did

16     you ever ask anybody for advice about whether or not your

17     classification of Mr. Garcia as exempt from overtime when

18     he was working at Taco Dos was correct.  You never asked

19     for any opinion?

20 A   I never asked for any opinion.

21          MR. HACKETT:  All right.  Thanks.  That's all the

22 questions I have at this time.

23          MR. COVELL:  Can we go off record?

24          COURT REPORTER:  We're off record at 12:37.

25 (Off record)

72

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB  Document 90  Filed 01/09/18  Page 20 of 22

1    MR. HACKETT:  Objection: form of the question.  For
2  you, it's unclear whether he's talking about Taco Azteca or Taco
3  Valley, Inc.
4  Q    All right.  So I'll back up.  The Exhibit 15 represents
5       some or all of the hours Mr. Garcia worked in 2016 for you
6       or one of your entities?
7    MR. HACKETT:  Compound, but I want to -- I mean, to
8  me -- let me -- the letter, on its face, is written on Taco
9  Azteca, Inc.  It doesn't seem to even talk about Taco Valley,
10  Inc., and so -- I don't want to make a --
11    MR. COVELL:  All right.  The responsive letter at 14
12  says both of them, okay?
13    MR. HACKETT:  But I'm talking about your -- okay.
14    MR. COVELL:  Okay.  I'll back up.
15  Q    Exhibit 15 is a compilation of time records for Mr. Garcia
16       in 2016; is that right?
17  A    Correct.
18  Q    All right.  All right.  To your understanding, does that
19       accurately depict the hours he worked, regardless of whom
20       he was -- what entity he may have been working for amongst
21       Taco Valley, Inc., Taco Azteca, Airport Way, or Taco
22       Azteca Dos?
23  A    That is the actual hours he worked, yes.
24  Q    Okay.  Thank you.  All right.  Good.  Now, I'm going to
25       go -- I'm going to take that away from you and put it in a
                                                              74

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
Case 4:17-cv-00005-TMB  Document 90  Filed 01/09/18  Page 21 of 22

```
 1              C E R T I F I C A T E

 2    UNITED STATES OF AMERICA              )
                                            )  ss
 3    STATE OF ALASKA                       )

 4            I, Marci L. Lynch, Notary Public in and for the State
      of Alaska, residing at Fairbanks, Alaska, and court reporter for
 5    Marci Lynch & Associates, Inc., do hereby certify:

 6            THAT the annexed and foregoing Deposition of WILFREDO
      GALLO was taken before Marci Lynch on the 30th day of August,
 7    2017, beginning at the hour of 10:53 o'clock a.m., at the
      offices of Marci Lynch & Associates, Inc., 330 Wendell Street,
 8    Suite A, Fairbanks, Alaska, pursuant to Notice to take the
      deposition of said witness on behalf of Plaintiff;
 9            THAT the above-named witness, before examination, was
      duly sworn to testify to the truth, the whole truth, and nothing
10    but the truth;
              THAT this deposition, as heretofore annexed, is a true
11    and correct transcription of the testimony of said witness,
      taken by me and thereafter transcribed by Amanda Berkstresser;
12            THAT the original of this deposition has been lodged in
      a sealed envelope with the attorney requesting transcription of
13    same, as required by Civil Rule 30(f)(1) amended, that being
      JAMES M. HACKETT, Attorney at Law, 401 Eleventh Avenue,
14    Fairbanks, Alaska 99701.
              THAT I am not a relative or employee or attorney or
15    counsel of any of the parties, nor am I financially interested
      in this action.
16
              IN WITNESS WHEREOF, I have hereunto set my hand and
17    affixed my seal this 18th day of September, 2017.

18

19

20

21

22                                        MARCI LYNCH
                                          Notary Public
23                                        State of Alaska
                                          My Commission Expires
24

25
                                                                      87

            Marci Lynch & Associates, Inc., 330 Wendell Street
         Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com
```

Case 4:17-cv-00005-TMB   Document 90   Filed 01/09/18   Page 22 of 22